Smith, J.
First — One of the errors assigned is, that the court of common pleas erred in the charge given to the jury, and in refusing to give the special instruction asked by the plaintiff. The instruction so asked was to this effect. “ That if the jury found from the evidence, that the defendant knew .the nature and amount of plaintiff’s claim, which he was then asserting against him, and then said to him ‘ I will make you a handsome payment now,’ or substantially these words, and did at the time pay plaintiff $1,000 on the claim, then such part payment removes the bar of bankruptcy, and you will be at liberty to return a verdict for the amount claimed by plaintiff.”
This charge the court refused to give, but did charge the jury, that a person who has been released by bankruptcy proceedings from the payment of a debt, may, if he desires to do so, make a partial payment thereon, without it having the effect to bind him to pay the residue, or any part thereof.
The charge so given we understand to be the law. That while by virtue of the express provisions of our statute of limitations, a payment made as a part payment of a known and ascertained debt, which is barred by such statute, will remove the bar, and give the party holding the claim a right to recover thereon, within a fixed time thereafter, notwithstanding it was once barred, such is not the case as to a debt *431 discharged by proceedings in bankruptcy. To make the former debtor liable therefor, there must be, as stated by Judge Spalding in the case of Turner v. Chrisman, 20 Ohio, 339, “ a distinct and unequivocal promise to pay it ” and such is the great weight of authority. The court of common pleas therefore properly declined to give to the júry the charge asked for, and to direct them to find for the plaintiff for the amount of his claim if it was shown only, that the defendant knew the nature and amount of plaintiff’s claim, and then said to him, “ I will make you a handsome present now,” and did then pay him $1,000. The court could not, as a matter of law, say that this was a distinct and unequivocal promise to pay the whole or the residue of the claim. This was a question to be determined by the jury under'appropriate instructions. But if it was for the court to say whether it was a distinct and unequivocal promise to pay the debt, the trial judge was right in refusing to hold that it was.
Second — The demurrer to the second defense (in which the defendant set up his discharge in bankruptcy), was properly overruled. If the defendant desired to avail himself of the discharge, he was bound to plead it, and there is no objection to the form in which it was done. The first defense denied that any account was stated between them, and by the second, the defendant averred that the original debt, which was the subject of the alleged stated account, was wholly discharged by the bankruptcy proceedings. There was no reply to this, and it is probable that the defendant was entitled to a judgment on the pleadings, for the allegation in the petition, “ that the defendant was indebted to plaintiff on an account stated between them on October 10, 1882,” is not equivalent to pleading an express promise to pay the amount stated therein. In an action on an account stated, it is not necessary either to allege or prove an express promise' to pay; it may be implied from the circumstances of the case, as by receiving such stated account, and making no objection thereto for a long time. But if the plaintiff here relied on a new promise to pay, he should have set it up by a reply. But the parties having, without objection, tried the case as if this issue was properly made on the pleadings, it is too late now to object to, or take advantage of this omission.
*432 Third — Objection is made that the court, by the charge to the jury, in effect withdrew Mrs. Messinger’s evidence from their consideration. We do- not so understand it. The trial judge did say to the jury that a statement made by her, that the defendant on one occasion said to her that “ Mr. Dyer shall never lose a cent by me, I intend to pay him every dollar I owe him,” would not avail to remove the bar of bankruptcy — and there being no relation of principal and agent between her and either of these parties, and there being nothing to show that she was to communicate this statement to the plaintiff, what was said was no more than an expression of ¡intention on the part of the defendant at that time, . and was not a promise to the plaintiff or his agent to pay this defendant, and he had no right to rely upon it, and the ruling of the court was right.
Fourth — The only remaining question is, whether the trial court erred in refusing to allow the counsel for the plaintiff, while cross examining the defendant as a witness, to inquire of him what he was worth, when (as claimed by plaintiff) he promised to pay the debt in question, viz.: on October 10, 1882, proposing to show by him that he was then worth $25,000 over and above all his liabilities, the claim of the plaintiff against him being about $2,100.
The question thus raised is a difficult one. Would such an answer, if given, have been relevant to the issue, and have tended to throw light upon the great question in the case, viz.: whether at that time, the defendant promised to pay this debt ? As to this, the parties were in direct conflict — one affirming, the other denying it. At the time this evidence was rejected by the court, it had either been shown, or the proof offered had tended strongly to show this state of fact— that the parties had been connected in business as partners and otherwise for many years. That they had failed in business over twenty-five years before, and that the plaintiff, after many years of toil, had paid the partnership debts; that the defendant had obtained a discharge in bankruptcy, and was released from the obligation to pay these and his other debts. That notwithstanding this, he had years before assured the plaintiff that if he ever got able he would pay him in full, *433 and had said this to others, and that the two had always been very warm and intimate friends; that on this occasion he had turned over to the plaintiff securities to the value of $1,000, and voluntarily gave him $25 to pay his expenses in coming to see him, and afterwards, on three separate occasions (and -on one of them without request), had sent him $100; but all these the defendant testifies, he intended as gifts, and not in fulfillment of a promise to pay the claim. On this state of fact, was the proof proposed relevant ?
Wharton, in his treatise on the Law of Evidence, section 20 and 21, says, “Relevancy is that which conduces to the proof •of a pertinent hypothesis. A pertinent hypothesis being one which, if sustained, would logically influence the issue.” * * * “ Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue, either more or less improbable.” And Stephens, in his Digest of the Law of Evidence, page 36, says, “ The word relevant’ means that any two facts to which it is applied, are so related to each other, that, according to the common course of events, one, either taken by itself, or in connection with other facts, proves, or renders probable, the past, present or future existence or non-existence of the otherand the author of the notes to this, says “ that while there is no general test of relevancy, yet it will generally be found that the circumstances” (the facts surrounding them we suppose) “of the parties to the suit, at the time of the controversy are relevant.” And the general statement of Mr. Stephens is, that “ evidence may be given of any fact in Issue, and of any fact relevant to any fact in issue, if not too remote.”
In the light of these general principles, we are of the opinion that evidence of the financial condition of Mr. Isham at the time in question was relevant — that the legitimate tendency of it, in connection with the other facts proved in the case, would have been to show that the proposition as to the promise which was in issue, was more or less probable. It would seem to us that a man in independent circumstances, or of large means, whose friend had paid debts for him from which he was legally discharged, but which he had declared should be *434 paid in full, would be much more likely,'to bind himself by a promise to pay them, than if he were in reduced circumstances,' and had barely sufficient to maintain himself or his-family. Of course such evidence of itself would be of little weight, for we recognize the fact that a man of great wealth, while admitting the justice of such claim upon him, might have declined under the circumstances named to bind himself to the payment of these barred debts. But we think the experience of men has shown that it is more probable that a man of ample means would do this, than one who was not financially able to do so.
David Davis, and J. T. Moore, for plaintiff in error.
'Coppock & Hammett, for defendant in error.
But whether this be so or not, if such evidence would have had the tendency to make the fact as to the promise having been made, more or less improbable, still it should have gone to the jury. “ The safer and more satisfactory rule is for the judge to admit whatever is relevant, and leave the question of its weight for the jury.”
We are not aware of any decision or statement of the law on this exact point. The case of Allison v. Horning, 22 Ohio St. 138, is somewhat analagous. It was there held, “that in an action to recover the amount due on a contract for work, when the testimony is conflicting as to the price agreed upon for the work, it is competent to show the value of such work at the time the contract was made, as tending to show what the agreed price was.” The court say that the evidence that the price of the work was less than that claimed to have been agreed upon, was a circumstance tending to weaken the probabilities in favor of the defendant’s claim, and to strengthen those in favor of the claim of the plaintiff. Such seems to us the case here, and that the evidence was relevant, and therefore competent.
For this rejection of the evidence, we think, the judgment should be reversed, and the cause remanded for a new trial.